David J. McGlothlin, Esq. (admitted *pro hac vice*)
david@westcoastlitigation.com
Ryan L. McBride, Esq. #16218
ryan@kazlg.com
**KAZEROUNI LAW GROUP, APC**
2633 E. Indian School Road, Suite 460
Phoenix, AZ 85016
Telephone: (602) 900-1288
Facsimile: (800) 520-5523

*Class Counsel*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **AIMEE MORRISON, ON BEHALF OF HERSELF AND OTHERS SIMILARLY SITUATED,** | **MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| Plaintiff, | |
| v. | **Case No.:** 1:17-cv-0051- CW-EJF |
| **EXPRESS RECOVERY SERVICES, INC. D/B/A/ CLEAR MANAGEMENT SOLUTIONS,** | Hon. Clark Waddoups |
| Defendant. | |

# TABLE OF CONTENTS

**Section**                                                                                                          **Page No.**

I.    INTRODUCTION .......................................................................................................... 1

II.   FACTS ......................................................................................................................... 1

III.  STANDARD   FOR   PRELIMINARY   APPROVAL   OF   CLASS   ACTION
SETTLEMENT ..................................................................................................................... 2

IV.   THE SETTLEMENT ...................................................................................................... 3

    A.    The Settlement Class ............................................................................................. 3

    B.    Settlement Payment .............................................................................................. 4

    C.    Class Notice .......................................................................................................... 4

    D.    Scope of Release ................................................................................................... 4

    E.    Opportunity To Opt Out And Object .................................................................... 5

    F.    Class Representative's Application For Incentive Award ...................................... 5

    G.    Class Counsel's Application For Attorneys' Fees, Costs And Expenses ............... 5

    V.    LEGAL ANALYSIS .............................................................................................. 5

VI.   THE   SETTLEMENT   SHOULD   BE   GIVEN   PRELIMINARY   APPROVAL   AS   IT   IS
FAIR,     REASONABLE,     ADEQUATE     AND     THE     PRODUCT     OF     DILIGENT
INVESTIGATION, LITIGATION AND NEGOTIATION ................................................. 6

    A.    The Settlement is a product of arms' length negotiations .................................... 7

    B.    The Settlement is fundamentally fair, reasonable and adequate ......................... 7

    C.    Utah Legal Services is an appropriate Cy Pres recipient .................................... 8

    D.    Other Courts Have Approved Cy Pres Only Settlements in FDCPA Cases. ............... 10

VII.  THE PROPOSED METHOD OF CLASS NOTICE IS APPROPRIATE ......................... 11

VIII. PROPOSED SCHEDULE ..................................................................................................... 13

IX.   THE PARTIES JOINTLY REQUEST A PRELIMINARY APPROVAL HEARING, IF NECESSARY, AND AN ORDER APPROVING THE PROPOSED CLASS SETTLEMENT. 13

X.    CONCLUSION................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**                                                                                **Page No.**

*Arata v. Nu Skin Int'l*, 96 F.3d 1265 (9th Cir. 1996) ..................................................... 3

*Ballard v. Equifax Check Services, Inc.*, 186 F.R.D. 589 (E.D. Cal. 1999) ................................. 2

*Bert v. AK Steel Corp.*, 2008 WL 4693747 (S.D. Ohio Oct. 23, 2008) .......................................... 7

*Boyd v. Bechtel Corp.*, 485 F.Supp 610 (N.D. Cal. 1979) ................................................... 6

*Carson v. American Brands, Inc.*, 450 U.S. 79 (1981) ...................................................... 3

*Catala v. Resurgent Capital Servs. L.P.*,

            No. CIV.08CV2401 NLS, 2010 WL 2524158 (S.D. Cal. June 22, 2010)      11

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ........................................... 3

*Dennis v. Kellogg Co.*, 2010 WL 4285011 (S.D. Cal. Oct. 14, 2010) ......................................... 7

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal.1980) ......................................... 6

*Ferrington v. McAfee, Inc.*, 2012 WL 1156399 (N.D. Cal. Apr. 6, 2012) ..................................... 8

*Fisher Bros. v. Cambridge Lee Industries, Inc.*,

      630 F.Supp. 482 (E.D. Pa. 1985) ..................................................................... 6

*Forcellati v. Hyland's Inc.*, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) .................................... 8

*Gravina v. United Collection Bureau, Inc.*,

      No. 2:09- CV-04816-LDW, 2010 WL 9075409 (E.D.N.Y. Nov. 29, 2010) ......................... 10

*Hammon v. Barry*, 752 F. Supp. 1087 (D.D.C. 1990) ........................................................ 7

*Hanlon v. Chrysler Corp.*, 150 F.3d at 1011 (1998) ....................................................... 11

Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,

      855 F. Supp. 825 (E.D.N.C. 1994) .................................................................... 2

*In re Armored Car Antitrust Litigation*, 472 F. Supp. 1357 (N.D. Ga. 1979) .............................. 7

In re Bromine Antitrust Litig., 203 F.R.D. 403 (S.D. Ind. 2001) ........................................... 3

*In re Chicken Antitrust Litigation*, 560 F. Supp. 957 (N.D. Ga. 1980) ..................................... 7

*In re Crocs, Inc. Secs. Litig.*, 2013 U.S. Dist. LEXIS 122593 (D. Colo. 2013) ............................ 2

*In re Gen. Motors*, 55 F.3d 768 (3d Cir.1995)..............................................................13

*In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 259 (2001)................................6

*In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379 (D. Md. 1983) ..............3

*In re NASDAQ Market-Makers Antitrust Litig.*,

176 F.R.D. 99 (S.D.N.Y. 1997) ...............................................................................3, 5

*In re Teletronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985 (S.D. Ohio 2001)...................3

Karvaly v. eBay, Inc., 245 F.R.D. 71 (E.D.N.Y. 2007)...................................................2

*Keele v. Wexler*, 149 F. 3d 589 (7th Cir. 1998) ..............................................................2

*Klier v. Elf Atochem N. Am., Inc.,* 658 F.3d 468 (5th Cir. 2011)....................................9

*Lane v. Facebook, Inc.*, 696 F.3d 811 (2012) ..................................................................9

*Larson v. Sprint Nextel Corp.*, 2010 WL 239934 (D.N.J. Jan. 15, 2010).......................7

*Littledove v. JBC & Associates, Inc.*,

2001 WL 42199 (E.D. Cal., January 11, 2001) ..........................................................2

*Livingstone v. Toyota Motor Sales USA, Inc.*,

1995 U.S. Dist. LEXIS 21757 (N.D. Cal. 1995) .......................................................3

*Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*,

834 F.2d 667 (7th Cir. 1987) .....................................................................................7

*Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173 (9th Cir. 1977)..................................12

*Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762 (D.N.J. Sept. 14, 2009)................7

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).........................11

*Nachshin v. AOL, LLC*, 663 F.3d 1034 (2011) ..............................................................9

*National Rural Telecommunications Coop. v. DIRECTV, Inc.*,

221 F.R.D. 523 (C.D. Cal. 2004)................................................................................6

*Offices for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982) ..................3

*Priddy v. Edelman*, 883 F.2d 438 (6th Cir. 1989)...........................................................7

*Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*,

No. CV-04-2195 CPS, 2006 WL 3681138 (E.D.N.Y. Dec. 11, 2006).....................10

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*,

    2010 WL 2486346 (C.D. Cal. June 15, 2010) ........................................................ 7

*Schwarm v. Craighead*, 233 F.R.D. 655 (E.D. Cal. 2006) ........................................... 2

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994) ......................................................... 11

*Sommers v. Abraham, Lincoln Federal Savings & Loan Association*,

    79 F.R.D. 571 (E.D. Pa. 1978) ............................................................................... 7

*Steinberg v. Carey*, 470 F. Supp. 471 (S.D.N.Y. 1979) ............................................... 7

*Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ........................... 12

*United States v. Hardage*, 982 F.2d 1491 (10th Cir. 1993) ......................................... 2

*United States v. State of New Mexico*, F. 2d 1324 (10th Cir. 1976) ............................ 9

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983) ................................................... 3

## Statutes

Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") ......................... passim

## Rules

Fed. R. Civ. P. 23 ...................................................................................................... 5, 10

## Treatises

2 *McLaughlin on Class Actions* § 6:7 (8th ed) ............................................................ 6

5 James Wm. Moore *et al.*, MOORE'S FEDERAL PRACTICE § 23.83[1] (3d ed. 2002) ..................... 2

Manual for Complex Litigation (4th ed. 2004) § 21.632 ............................................. 5

MANUAL FOR COMPLEX LITIGATION, § 30.44 (2d ed. 1985) ......................................... 3

Newberg on Class Actions § 12:26 (5th ed. 2017) ...................................................... 8

## I. INTRODUCTION

In this putative class action, Plaintiff AIMEE MORRISON("MORRISON") asserts that Defendant EXPRESS RECOVERY SERVICES, INC D/B/A CLEAR MANAGEMENT SOLUTIONS ("Clear Management Solutions") violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") by failing to include notices in Clear Management Solutions' collection letters pursuant to 15 U.S.C. § 1692g and 1692e(11).

On June 25, 2019, the parties attended a settlement conference with Magistrate Judge Paul Kohler and with the assistance of Judge Kohler were able to agree to a class wide settlement. Pursuant to the terms of the Settlement Agreement attached as Exhibit 1 to the Declaration of David J. McGlothlin ("McGlothlin Declaration"), the Parties now jointly request this Court to preliminarily approve the proposed class settlement.

## II. FACTS

On April 10, 2017 Plaintiff filed a class action lawsuit (See ECF #1), alleging Defendant violated the Fair Debt Collections Practices Act 15 U.S.C. §1692 *et. seq.* by failing to include the proper notices that Defendant was a debt collector attempting to collect a debt and failing to provide the notice pursuant to 15 U.S.C. §1692(g) regarding a consumer's ability to dispute an alleged debt. Discovery is now closed. Plaintiff has prevailed on her motion for summary judgment, and has certified a class action consisting of 40,887 Utah consumers who received violating letters from Defendant. See ECF # 47.

> The class is defined as:
>
> All persons with addresses within Utah; who were sent any communication which was similar or identical to Plaintiff's Exhibit A on behalf of Utah Imaging Associates; to recover a consumer debt; in which this initial communication failed to provide the notice required by 15 U.S.C. § 1692g and/or 15 U.S.C. § 1692e(11); which were not returned undelivered by the United States Postal Service; from April 11, 2016 until April 11, 2017.

The only issue remaining is damages to the class. Therefore, on June 25, 2019, the parties attended a settlement conference with Magistrate Judge Paul Kohler and were able to agree to a

class wide settlement in which the parties agreed to create a settlement fund of $20,000 (hereinafter referred to as "Settlement Fund"). From this Settlement Fund the parties have agreed that Plaintiff Aimee Morrison may request an incentive award of $2,000 and the remaining $18,000 shall be awarded in the form of a Cy Pres award to non-profit Utah Legal Services ("ULS").

## III. STANDARD FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Congress expressly recognized the propriety and utility of class litigation for enforcement of consumers' rights under the FDCPA. As such, through enactment of 15 U.S.C. §§ 1692k(a)(2)(B) and (b)(2), Congress provided an express statutory mechanism for computation of class awards. *See* 15 U.S.C §§ 1692k(a)(2)(B) and (b)(2); *Ballard v. Equifax Check Services, Inc.*, 186 F.R.D. 589 (E.D. Cal. 1999); *Littledove v. JBC & Associates, Inc.*, 2001 WL 42199 (E.D. Cal., January 11, 2001); *Schwarm v. Craighead*, 233 F.R.D. 655 (E.D. Cal. 2006); *Keele v. Wexler*, 149 F. 3d 589 (7th Cir. 1998).

The approval of a proposed settlement of a class action suit is a matter within the broad discretion of the trial court. *United States v. Hardage*, 982 F.2d 1491, 1495 (10th Cir. 1993). Preliminary approval does not require the trial court to answer the ultimate question of whether a proposed settlement is fair, reasonable and adequate. Rather, the determination is made only after notice of the settlement has been given to the members of the Class and after they have been given an opportunity to voice their views of the settlement. *See In re Crocs, Inc. Secs. Litig.*, 2013 U.S. Dist. LEXIS 122593, at *10-11 (D. Colo. 2013); and, 5 James Wm. Moore *et al.*, MOORE'S FEDERAL PRACTICE § 23.83[1], at 23-336.2 to 23-339 (3d ed. 2002).

Courts have also noted that the standard for preliminary approval is less rigorous than the analysis at final approval. See, e.g., Crocs, 2013 U.S. Dist. LEXIS, at *10-11; Karvaly v. eBay, Inc., 245 F.R.D. 71, 80 (E.D.N.Y. 2007); Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 855 F. Supp. 825, 827 (E.D.N.C. 1994) (holding that the issue at preliminary approval is whether there is probable cause to justify notifying the class members of proposed settlement); In re

Bromine Antitrust Litig., 203 F.R.D. 403, 416 (S.D. Ind. 2001) (bar for obtaining preliminary approval of class action settlement is low).

In considering a potential settlement, the trial court need not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute (*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2d Cir. 1974) and need not engage in a trial on the merits. *See Offices for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982).[1] The relevant inquiry is "to [weigh] the likliehood of success on the merits against the amount and form of the relief offered in the settlement." *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983) citing to *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 (1981).

## IV. THE SETTLEMENT

### A. The Settlement Class

The "Class" definition remains the same from the Court's January 7, 2019 order:

> All persons with addresses within Utah; who were sent any communication which was similar or identical to Plaintiff's Exhibit A on behalf of Utah Imaging Associates; to recover a consumer debt; in which this initial communication failed to provide the notice required by 15 U.S.C. § 1692g and/or 15 U.S.C. § 1692e(11); which were not returned undelivered by the United States Postal Service; from April 11, 2016 until April 11, 2017.

Based upon Clear Management Solutions' investigation into the matter, the total number of Class Members in the Settlement Class is estimated to be approximately 40,887.

---

[1] Various District Courts across the country have also followed this analysis in deciding whether preliminary approval is appropriate. *See Arata v. Nu Skin Int'l*, 96 F.3d 1265, 1268-69 (9th Cir. 1996) (noting, in approving settlement that 'district court evaluated the proposed settlement and granted preliminary approval...in accordance with the procedures outlined in the Manual for Complex Litigation"); *Livingstone v. Toyota Motor Sales USA, Inc.*, 1995 U.S. Dist. LEXIS 21757, at *23-24 (N.D. Cal. 1995) (preliminary approval recommended where special master concludes that proposed settlement "[fell] within the range of possible approval" because "(a) the negotiations occurred at arm's-length; (b) there was sufficient discovery; [and] (c) the proponents of the settlement are experienced in similar litigation"); *In re Teletronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1015-1016 (S.D. Ohio 2001) (same, citing MANUAL FOR COMPLEX LITIGATION, § 30.44 (2d ed. 1985)); *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (same); *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379 (D. Md. 1983) (same).

**B. Settlement Payment**

Under the Settlement, Clear Management Solutions agrees to establish a Settlement Fund in the amount of $20,000.00 to be paid within 30 days of Final Judgment. [Settlement Agreement, ¶ 3]. This number represents the maximum amount payable by Clear Management Solutions to the class members in this Action. From this Settlement Fund the parties have agreed that Plaintiff Aimee Morrison may request an incentive award of $2,000 and the remaining $18,000 shall be awarded in the form of a Cy Pres award to Utah Legal Services ("ULS"). No funds would be distributed to the class members.

**C. Class Notice**

The Parties propose using a third-party claims administrator, to facilitate the administration of all claims in this matter. The Claims Administrator's responsibilities will include, but are not limited to, providing notice to the class members, fielding inquiries related to the settlement, and issuing the settlement payments. [Settlement Agreement, ¶ 7]. However, Clear Management Solutions will bear the cost of administration outside of the Settlement Fund.

The Claims Administrator will also maintain a settlement website as well as a toll-free settlement call center from which Class Members can obtain further information regarding the settlement. Class Counsel has requested several bids from claims administrators, and the Angeion Group submitted the lowest bid. Therefore, Class Counsel requests that the Angeion Group be appointed the Claims Administrator to distribute the notice to the class.

**D. Scope of Release**

The Parties desire and seek Court approval of the settlement and a final judgment and order dismissing with prejudice the claims of Morrison and the Class Members as set forth in this Settlement Agreement. The scope of the release by all Class Members (other than those who exclude themselves from the Settlement) covers any and all actions, causes of action, obligations, costs, expenses, damages, losses, claims, liabilities, and demands, of whatever character, known or unknown, arising out of, relating to, or in connection with, the Complaint, the claims asserted

in Action, the Clear Management Solutions' form written communication, and the administration of this settlement. [Settlement Agreement, ¶ 14.1].

### E. Opportunity To Opt Out And Object

Under the terms of the proposed Settlement, Class members will have the right to opt out of the Settlement or object to its terms. [See Settlement Agreement, ¶¶ 9-10]. The deadline for doing so is within 60 days of the completion of notice. [Settlement Agreement, ¶ 9]. Class members will be informed of these rights through the Settlement Website and the mailed post-card notice, and information available by calling the Toll Free Number. [*Id*.].

### F. Class Representative's Application For Incentive Award

Morrison will apply to the Court for an incentive award of up to $2,000.00 for Morrison's service as Class Representative in this action. Any incentive award approved by the Court will be paid by the Claims Administrator out of the Settlement Fund established by Clear Management Solutions before payments to other class members are made. [*See* Settlement Agreement, ¶ 6].

### G. Class Counsel's Application For Attorneys' Fees, Costs And Expenses

Class Counsel shall separately move the Court for an award of attorney's fees and costs ("Motion for Fees") [Settlement Agreement, ¶ 5]. Any award of fees and costs approved by the Court shall be paid outside the Settlement Fund. [*Id*.]. Court approval of Class Counsel's attorney's fees and costs is not a condition of the settlement. [*Id*.].

## V. <u>LEGAL ANALYSIS</u>

Rule 23(e) requires court approval for settlement of class claims. Approval of a class settlement occurs in two steps:

First, the Court grants preliminary approval of the settlement.

Second, after the settlement is preliminarily approved and notice of the settlement is provided to the class, the Court conducts a fairness hearing to determine if the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation (4th ed.

2004) § 21.632; *In re NASDAQ Market Makers Antitrust Litigation*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

The instant Motion is submitted in support of the first step of the settlement approval process.

## VI. THE SETTLEMENT SHOULD BE GIVEN PRELIMINARY APPROVAL AS IT IS FAIR, REASONABLE, ADEQUATE AND THE PRODUCT OF DILIGENT INVESTIGATION, LITIGATION AND NEGOTIATION

Under 15 U.S.C. §1692k, a plaintiff may recover a maximum award "not to exceed the lesser of $500,000 or 1 percent of the net worth of the debt collector…" 15 U.S.C. §1692k. Here the Class Award exceeds the one (1) percent multiplier of Defendant's actual net worth. In discovery Defendant has produced an "Independent Accountant's Compilation Report" purporting Defendant's net worth to be $1,542,303, therefore the statutory cap would create a minimum settlement fund of $15,423.03. See McGlothlin Declaration ¶ 6. Thus, the Settlement Fund of $20,000 exceeds the maximum amount the Class can be awarded should this case proceed to trial.

Further, given counsels' thorough analysis of the legal and factual issues raised by this case, this litigation has reached the stage where "the Parties certainly have a clear view of the strengths and weaknesses of their cases" sufficient to support the Settlement. *Boyd v. Bechtel Corp.*, 485 F.Supp 610, 617 (N.D. Cal. 1979). Based on their experience with these types of cases and analysis of the issues raised herein, counsel share the view that this is a fair and reasonable settlement and in the best interests of the Class. Because of the detailed legal and actual analysis conducted by counsel for both parties, their endorsement of the Settlement "is entitled to significant weight" in deciding whether to approve the Settlement. *Fisher Bros. v. Cambridge Lee Industries, Inc.,* 630 F.Supp. 482, 488 (E.D. Pa. 1985); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal.1980); *Boyd v. Bechtel Corp.*, 485 F.Supp. 616-617. Courts should not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the

litigation. *National Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

### A. The Settlement is a product of arms' length negotiations

This settlement was reached by experienced counsel on both sides following non-collusive negotiations facilitated by the Honorable Magistrate Judge Paul Kohler. Judge Kohler was instrumental in an agreement being reached. As such, the settlement is entitled to a presumption of fairness. *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 380. See also *Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) (approving a settlement after a one-day mediation before a retired federal judge and noting that "the participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties (emphasis added)"); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) (approving settlement after a one-day mediation and noting that "the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"; *Larson v. Sprint Nextel Corp.*, 2010 WL 239934, at *11 (D.N.J. Jan. 15, 2010) (same); *Bert v. AK Steel Corp.*, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008); 2 *McLaughlin on Class Actions* § 6:7 (8th ed) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion (emphasis added)."); and, *Dennis v. Kellogg Co.*, 2010 WL 4285011, at *4 (S.D. Cal. Oct. 14, 2010) (the parties engaged in a "full-day mediation session," thus establishing that the proposed settlement was noncollusive."). Said negotiation was hard fought and resulted in a Settlement Fund that exceeds Defendant's maximum liability at trial. Thus, there can be no dispute that the Settlement was reached through non-collusive arm's length negotiations by the Parties. *See Liberman*, 73 F.R.D. at 535.

### B. The Settlement is fundamentally fair, reasonable and adequate

Moreover, there can be little doubt that the settlement is fair, reasonable and adequate as it necessarily satisfies the "within the range of possible approval" standard for preliminary

approval.[2]  Under the FDCPA, Congress included a cap on statutory damages recoverable for a class action.  Specifically, "the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $ 500,000 or 1 per centum of the net worth of the debt collector."  15 U.S.C. § 1692k(a)(1)(B).

As discussed above, Defendant has produced an "Independent Accountant's Compilation Report" purporting Defendant's net worth to be $1,542,303, therefore the statutory cap would create a minimum settlement fund of $15,423.03. *See* McGlothlin Declaration ¶ 6. Therefore, the creation of a Settlement Fund in the amount of $20,000 reflects a settlement that is 20% greater than Defendant's maximum liability at trial.  Therefore, the amount of the settlement is fundamentally fair, reasonable, and adequate.

### C.      Utah Legal Services is an appropriate Cy Pres recipient

The parties jointly request that this Court award the Settlement Fund to the non-profit Utah Legal Services in the form on a cy pres award. If the settlement fund was to be distributed to the individual class members each class member would receive a negligible amount. Splitting the proposed settlement of $18,000[3] equally among class members would result in each person receiving approximately 44 cents. Even a pro-rata split of the Settlement Fund from those that opt-in to the settlement would still not yield much better results. Traditional opt-in percentage rates are typically 3-5% of the class members. See *Forcellati v. Hyland's Inc.*, 2014 WL 1410264, at *6 (C.D. Cal. Apr. 9, 2014).   See also *Ferrington v. McAfee, Inc.*, 2012 WL

---

[2] Courts presume the absence of fraud or collusion in the negotiation of a settlement unless evidence to the contrary is offered.  In short, there is a presumption that negotiations were conducted in good faith.  *Newberg*, § 11.51; *In re Chicken Antitrust Litigation*, 560 F. Supp. 957, 962 (N.D. Ga. 1980); *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989); *Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*, 834 F.2d 667, 682 (7th Cir. 1987).  Courts do not substitute their judgment for that of the proponents, particularly where, as here, settlement as been reached with the participation of experienced counsel familiar with the litigation. *Hammon v. Barry*, 752 F. Supp. 1087 (D.D.C. 1990); *Steinberg v. Carey*, 470 F. Supp. 471 (S.D.N.Y. 1979); *In re Armored Car Antitrust Litigation*, 472 F. Supp. 1357 (N.D. Ga. 1979); *Sommers v. Abraham, Lincoln Federal Savings & Loan Association*, 79 F.R.D. 571 (E.D. Pa. 1978).
[3] The Settlement Fund is $18,000 in which the parties have agreed that Plaintiff may apply for an incentive award of $2,000 leaving $16,000 for the class members.

1156399, at *4 (N.D. Cal. Apr. 6, 2012) "[T]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3-5 percent."

In this case, five percent of the Class would be 2,045 individuals. If they were to split the Settlement Fund amount on a pro rata basis, each class member would receive approximately $8.80. It is important to note with a direct mail notice plan claims rates can be much higher, as class counsel has seen a 20% claims rate in the past. *See* McGlothlin Declaration ¶ 8. If that were to occur here each class member would receive $2.20.

Therefore, Class counsel is requesting that the settlement fund be directed to a Cy Pres recipient. Cy Pres–only settlements are considered the exception, not the rule. See *Klier v. Elf Atochem N. Am., Inc.,* 658 F.3d 468, 474 (5th Cir. 2011) (explaining that direct distributions to class members are preferable because "[t]he settlement-fund proceeds, having been generated by the value of the class members' claims," are "the property of the class"); accord William B. Rubenstein, Newberg on Class Actions § 12:26 (5th ed. 2017). However, Cy Pres-only settlements are appropriate where the settlement fund is "non-distributable" because "the proof of individual claims would be burdensome or distribution of damages costly." *742 Lane,* 696 F.3d at 819 (quoting *Nachshin*, 663 F.3d at 1038).

According to Class Counsel's research, Cy Pres only settlements have never been addressed by the 10th circuit. In fact, the 10th Circuit has never discussed the concept of Cy Pres relief in detail. *See United States v. State of New Mexico,* F. 2d 1324, 1326 (10th Cir. 1976) (mentioning without elaboration, in a non-class action, that the district court had "refused to apply the doctrine of Cy Pres)." Without guidance, district courts within the 10th circuit have treated the concept of Cy Pres differently. Honorable Browning in the District of New Mexico disfavors the concept entirely[4], while Honorable Judge Jenkins and Judge Stewart in the District

---

[4] See *Lane v. Page,* 862 F. Supp. 2d 1182, 1231-1232 (D.N.M. 2012)(Browning, J.)(citations omitted). *See In re Thornburg Mortg., Inc. Secs. Litig.,* 885 F. Supp. 2d 1097, 1105-12 (D.N.M. 2012)(Browning, J.).

of Utah have approved class actions where the unclaimed funds were awarded to a Cy Pres recipient.[5]

Class counsel suggests a settlement be reached awarding the settlement fund to Utah Legal Services. Utah Legal Services (ULS) is a nonprofit law office incorporated in 1976 committed to making equal justice a reality by providing free legal help in non-criminal cases to low-income Utah residents. Utah Legal Services is the only statewide program that does consumer protection on a non-profit basis. *See* Declaration of Michael E. Bulson ("Bulson Declaration") ¶ 4. Specifically, Utah Legal Services assist Utah consumers with a myriad of issues, which include violations of the Fair Debt Collection Practices Act. *Id*. at ¶ 8. Therefore a cy pres award to Utah Legal Services would aid in Utah consumers enforcing the protections due to them under the FDCPA. *Id.* At ¶¶ 6 and 9. Due to the de minimus amount that would be distributed to the Class, Counsel believes a cy pres award would be a more appropriate use of the settlement fund.

### D. Other Courts Have Approved Cy Pres Only Settlements in FDCPA Cases.

Due to the cap on statutory damages in FDCPA cases, other courts have approved Cy Pres only settlements. The most analogous case is *Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.,* the Eastern District of New York approved a settlement agreement that included $2,000 to the named plaintiffs and $15,000 as a Cy Pres payment to the Queens County Legal Aid Society. See *Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.,* No. CV-04-2195 CPS, 2006 WL 3681138, at *11 (E.D.N.Y. Dec. 11, 2006). In concluding that a Cy Pres award of $15,000 was an appropriate remedy, the court recognized that the FDCPA limits damages to the "lesser of $500,000 or 1 per centum of the net worth of the debt collector," 15 U.S.C. 1692k(a). Because the defendant only had a net worth of $1,000,000 the total damages available under the FDCPA were then limited to only $10,000. With a class of over 45,000, the distribution to individual

---

[5] See *McPolin v. Credit Serv. of Logan, Inc*., 2017 U.S. Dist. LEXIS 59420 at 13 (D. Utah Apr. 17, 2017 and *Owner-Operator Indep. Drivers Ass'n v. C.R. England, Inc*., 2014 U.S. Dist. LEXIS 116641 at 7 (D. Utah June 19, 2014) respectively.

class members would be de minimus. *Read-Alvarez*, 2006 WL 3681138, at *7. In light of this "best possible recovery," a settlement for $15,000 was reasonable. *Id.*

Furthermore, in *Gravina v. United Collection Bureau, Inc.,* the court granted a class settlement that included attorneys' fees, injunctive relief, damages to named plaintiffs, and a Cy Pres award of $13,254.01 to the Make-A-Wish Foundation. See *Gravina v. United Collection Bureau, Inc.*, No. 2:09- CV-04816-LDW, 2010 WL 9075409, at *2 (E.D.N.Y. Nov. 29, 2010).

Finally, in *Catala v. Resurgent Capital Services, L.P.*, the Southern District of California approved a settlement that provided for "$35,000, which is $10,000 more than 1% of [defendant's] net worth" to the San Diego Legal Aid Society and $2,500 to named plaintiff. See *Catala v. Resurgent Capital Servs. L.P.*, No. CIV.08CV2401 NLS, 2010 WL 2524158, at *11 (S.D. Cal. June 22, 2010).

Accordingly, the parties respectfully request that this Court preliminarily approve the Class Settlement.

## VII.   THE PROPOSED METHOD OF CLASS NOTICE IS APPROPRIATE

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct to class members the "best notice practicable" under the circumstances. Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received." *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). Notice need only be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025.

Pursuant to Fed. R. Civ. P. 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal". Rule 23(c)(2)(B) also sets forth requirements as to the content of the notice. The notice must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class; (iii) the class claims, issues, or defenses; (iv) that class member may enter an appearance through

counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

Here, Class Counsel requests direct mail notice in the form of a post card ("Direct Mail Notice"). *See* Exhibit 2. Furthermore, counsel requests that a website be created that has a longer more detailed "Long-Form" notice. *See* Exhibit 3. The Direct Mail Notice and the Long-Form Notice to be posted on the settlement website meet all the requirements. The Claims Administrator will mail individual Direct Mail Notices to the 40,887 Class Members whose addresses will be provided by Defendant. This initial mailing of the Direct Mail Notice shall occur within 30 days after the Preliminary Approval. Agreement. The notice procedure also requires searches by the Claims Administrator to obtain current addresses for mail returned by the postal service. If the Direct Mail Notice to any person is returned as undeliverable, and if a new address is obtained for such person, a second Direct Mail Notice shall be mailed to the new address as soon as possible after the original Direct Mail Notice was mailed.

In addition, the Parties have agreed to post the notice on the settlement website, which the Claims Administrator will establish and maintain. The settlement website will allow visitors and class members to access (and print) a complete copy of the Direct Mail Notice, the Agreement of Settlement, various other filings associated with this matter.

Also, Class Counsel requests that the approved Notice plan include a creation of a toll-free phone number where anyone can obtain information about the Settlement. The Claims Administrator will maintain a Toll-Free Number throughout the Claims Period, which shall allow callers to request copies of the Direct Mail Notice and the Agreement of Settlement, and to determine whether they are Class Members once they have provided appropriate identifying information.

Furthermore, the notices will be disseminated and also posted on the website sufficiently prior to the Final Approval hearing to give Class members the opportunity to comment on the

settlement, or to opt out and preserve their rights.  *See Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370, 1374-1375 (9th Cir. 1993) (31 days is more than sufficient, as Class as a whole had notice adequate to flush out whatever objections might reasonably be related to the settlement) citing *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977) (approving timing of a notice which was mailed 26 days before the deadline for opting out of a settlement). Here, there will be ninety (60) days to opt out or object to the proposed settlement. Accordingly, both the Direct Mail Notice as well as the notice posted on the settlement website fulfills all requirements of adequate notice and should be duly approved.

The mailing of the Direct Mail Notice combined with the posting of the notice on the website, satisfies the requirements of due process, is the best notice practicable under the circumstances, and constitutes due and sufficient notice.

## VIII.  <u>PROPOSED SCHEDULE</u>

Class Counsel requests that the settlement be preliminarily approved with the following deadlines:

| Notice to Class Members | 30 days after Preliminary Approval |
|---|---|
| Opt Out Deadline | 60 days after notice |
| Objection Deadline | 60 days after notice |
| Motion for Attorney's Fees | 30 days prior to deadline to object |
| Motion for Final Approval | 30 days after objection/opt out deadline |
| Final Approval Hearing | To be determined by the Court |

## IX.  <u>THE PARTIES JOINTLY REQUEST A PRELIMINARY APPROVAL HEARING, IF NECESSARY, AND AN ORDER APPROVING THE PROPOSED CLASS SETTLEMENT</u>

The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re Gen. Motors*,

55 F.3d 768, 784 (3d Cir.1995). The parties jointly request that the Court schedule a Preliminary Approval Hearing. The parties respectfully request that the Court approve and adopt the attached proposed "Class Action Settlement Agreement and General Release."

By settling this matter, both parties avoid the expense of trial and uncertainty of outcome. If this matter proceeded to trial the net value of the recovery would be further decreased due to the cap on statutory damages. The Court, after reviewing the terms negotiated upon by the parties, will find that the settlement reached will be fair, adequate and reasonable for all involved. Therefore, the circumstances of this matter, as discussed above, heavily weigh in favor of the proposed settlement.

## X. <u>CONCLUSION</u>

The parties have reached a settlement in principal, which is fair, adequate and reasonable. As discussed above, the limitations on class recovery and the size of the class warrant approving a settlement in the form of a Cy Pres award to Utah Legal Services. A class action will avoid inconsistent judgments and prejudice to the class members.

For the foregoing reasons, the parties respectfully request that the Court (1) grant preliminary approval of the proposed Settlement, (2) approve the proposed Notice procedure an the form, manner and content of the Notice, (3) stay all proceedings until the Court renders a final decision regarding the approval of the Settlement, and (4) schedule a hearing for Final Approval.


Dated: August 29, 2019                    **KAZEROUNI LAW GROUP, APC**

                                          By: _/s/ David J. McGlothlin____
                                                  David J. McGlothlin, Esq.
                                                  Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing *Motion for Preliminary Approval of Class Action Settlement* has been filed this 29th day of August 2019, through the Court's electronic filing system.  All parties may access the foregoing via the Court's electronic filing system.

By: /s/ David J. McGlothlin
David J. McGlothlin, Esq.