## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AIMEE MORRISON, ON BEHALF OF HERSELF AND OTHERS SIMILARLY SITUATED,<br>    **Plaintiffs,**<br><br>v.<br><br>EXPRESS RECOVERY SERVICES, INC. D/B/A CLEAR MANAGEMENT SOLUTIONS,<br>    **Defendant.** | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR FEES, COSTS, AND INCENTIVE PAYMENT**<br><br>**Case No. 1:17-cv-51**<br><br>**Judge Clark Waddoups** |

Before the court is Plaintiffs' Motion for Attorneys' Fees, Costs, and Incentive Payment (ECF No. 69), which asks the court to grant their counsel ("Class Counsel") $180,429.00 in attorneys' fees and $8,236.21 in costs.[1]  Class Counsel request that the "lodestar" approach be applied to their request for fees, which they calculate, based on 293.8 hours of litigation, produces a combined lodestar of $120,286.00.[2]  Class Counsel also ask that a multiplier of 1.5 be applied to that lodestar amount, for a total fee award of $180,429.00.[3]  The motion has been fully briefed, and the court heard argument on the same at a hearing conducted on June 29, 2020.  For the reasons stated herein, Plaintiffs' Motion is **GRANTED IN PART AND DENIED IN PART**.

---

[1]  Class Counsel's Motion requests $22,684.62, but of that amount, $13,704.45 were for costs related to claims administration, which were already awarded by the court in Settlement Order and Final Judgment (ECF No. 79). Moreover, Class Counsel withdrew their request for an itemized cost incurred on 2/28/20 for "refundable/adjustable Flights to final approval hearing" in the amount of $743.96, as Class Counsel canceled its travel plans, and received a refund for that amount, due to the Final Approval Hearing being held telephonically.

[2]  Plaintiffs' submitted bill shows a total of $118,534.00.  (*See* ECF No. 69-4).  However, the court, in verifying the bill, finds that the total hours billed, when multiplied by the applicable rates for those hours, created a total bill of $120,286.00.  The court is unsure as to the basis for this discrepancy but will use the total it calculated.

[3]  Plaintiffs' motion requests a total fee award of $177,801, but the court concludes this sum is erroneous, as it was calculated using the erroneous billed total of $118,534.00.

I.     **Plaintiffs' Request for Attorney Fees is Granted in Part and Denied in Part.**

The Tenth Circuit recently summarized the analysis that a district court must undertake in determining whether a request for attorney fees is reasonable.  "When determining what is a reasonable award of attorney fees, the district court must calculate the 'lodestar,' which is the reasonable number of hours spent on the litigation multiplied by a reasonable hourly rate." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1233 (10th Cir. 2000) (citing *Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan.*, 157 F.3d 1243, 1249 (10th Cir. 1998)). Thus, the process involves two steps: first, determine the reasonable number of hours billed, and second, determine the reasonable hourly rate for that time.

As to the first step, "[t]he party requesting attorney fees bears the burden of proving the amount of hours spent on the case" and must "submit 'meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks.'"  *Id.* at 1233–34 (quoting *Case*, 157 F.3d at 1250).  If the presented records are inadequate, the court may reduce the number of hours, and it must reduce hours "to ensure services an attorney would not properly bill to his or her client are not billed to the adverse party."  *Id.* at 1234 (citing *Case*, 157 F.3d at 1250).

For the second step, "'the district court should base its hourly rate award on what the evidence shows the market commands for . . . analogous litigation.'" *Id*. (quoting *Case*, 157 F.3d at 1255).  Again, "[t]he party requesting the fees bears 'the burden of showing that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  *Id*. (quoting *Ellis v. University of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir.1998)).  "The focus must be on the 'prevailing market rate in the relevant community,'" and the court cannot simply "use its own knowledge to

establish the appropriate rate unless the evidence of prevailing market rates before the court is inadequate." *Id*. (internal citations omitted).

### A. Reasonableness of Number of Hours Billed

Class Counsel had two attorneys work on this case, David McGlothlin and Ryan McBride, as well as a paralegal, Emily Torromeo. In total, Class Counsel billed 293.8 hours on this case, of which 181.7 were billed by Mr. McGlothlin, 107.9 by Mr. McBride, and 4.2 by Ms. Torromeo. These numbers reflect a 20-hour reduction by Mr. McGlothlin and a 10-hour reduction by McBride. Defendants argue that the number of hours Class Counsel claim is excessive and that Class Counsel have block billed their time and have impermissibly duplicated tasks.

"It is within the district court's broad discretion, given its first-hand experience of the litigation as a whole, to make a holistic determination, rather than a meticulous accounting, in deciding the appropriate fee." *Sinajini v. Bd. of Educ. of San Juan Cty. Sch. Dist.*, 53 F. App'x 31, 39 (10th Cir. 2002). Looking at Class Counsel's time entries as a whole, they do not seem excessive for the work performed. Class Counsel are required to submit "meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *See Case*, 157 F.3d at 1250. Although some of Class Counsel's entries are block billed, they, as a whole, provide sufficient information to allow the court to determine how many hours each lawyer who worked on this case billed and to which tasks those hours were devoted.

Class Counsel's block billing does, however, pose a problem when it prohibits the court from determining the time Class Counsel spent traveling to proceedings. The Tenth Circuit has recognized that "because there is no need to employ counsel from outside the area in most cases,

we do not think travel expenses for such counsel between their offices and the city in which the litigation is conducted should be reimbursed," and that "[d]eparture from this rule should be made in unusual cases only." *Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir. 1983). Class Counsel argue that this case constitutes an "unusual case," where time billed for travel should be awarded, as they are "unaware of any other attorneys who perform the work at the level and skill that [they do] and did in this case in the Salt Lake City Area." (ECF No. 72 at 3). Class Counsel fail to provide a basis for their knowledge, or lack thereof, and the court is not be persuaded, as it is aware of a number of attorneys in the area who practice in the areas of consumer rights/protection and the Fair Debt Collection Practices Act. As such, it declines to award Class Counsel the time it spent traveling to court appearances and conferences.

At the June 29 hearing on Plaintiffs' Motion, Class Counsel represented that they efficiently used the time they spent traveling to work on this case, and as such, the time was not just empty travel time. While the court does not question Class Counsel's representation, some of their time entries are, unfortunately, insufficiently detailed to allow the court to make such a finding. At issue are three entries from Mr. McGlothlin: the June 28, 2018 entry for 7 hours traveling to and home from hearing on motion for summary judgment, the June 25, 2019 entry for 9 hours traveling to and home from settlement conference, and the December 18, 2019 entry for 5 hours for traveling to and from the preliminary approval hearing. (*See* ECF No. 69-4).

The June 28, 2018 entry is a block bill that covers, in one seven-hour entry, traveling to and from a hearing and attending the hearing. While the entry indicates that Mr. McGlothlin "p]repare[d] for hearing during trip out" and "[o]utline[d] case strategy moving forward and update co-counsel during trip back," the court cannot discern how much of the billed seven hours was devoted to the such activities (or how much was devoted to attending the hearing). As such,

the court must discount the entire block of time.  *See Case*, 157 F.3d at 1250 ("A district court is justified in reducing the reasonable number of hours if the attorney's time records are 'sloppy and imprecise' and fail to document adequately how he or she utilized large blocks of time." (quoting *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995))).  Similarly, Class Counsel's June 25, 2019 entry is also a block bill that does not distinguish between time Mr. McGlothlin billed for traveling to and from the hearing from time he billed for attending the hearing and must therefore be discounted.  *See id*.  Finally, because Class Counsel's December 18, 2019, entry is not block billed, the court can determine that the 2.5 hours Mr. McGlothlin spent traveling to the preliminary approval hearing was used to review documents and briefing in preparation for the hearing, and is thus recoverable; however, the bill's absence of similar language for the flight back leads the court to deduce that Mr. McGlothlin did not spend the return flight working on this case.  As such, that time is not recoverable.  In sum, Mr. McGlothin's total billed time of 181.7 hours should be reduced by 18.5 hours, to total 163.2 total hours of recoverable time.

### B.  Reasonableness of Attorneys' Hourly Rate

Here, Mr. McGlothlin billed at $450/hour, Mr. McBride billed at $350/hour, and Ms. Torromeo billed at $180/hour.  Defendant argues that these rates are "ludicrous" (ECF No. 71 at 5), but Class Counsel respond that "multiple courts in multiple jurisdictions have approved both of Plaintiff's attorneys' rates at the amount requested."  (ECF No. 72 at 2).  Such an argument misses the mark, as it ignores that in determining the reasonableness of a rate, "[t]he focus must be on the 'prevailing market rate in the relevant community.'"  *United Phosphorus* 205 F.3d at 1234 (quoting *Ellis*, 163 F.3d at 1203).  Every case that Class Counsel cites to show that their requested rates have been approved is from the Ninth Circuit, primarily Washington, California,

and Arizona and thus none represents an appropriate rate for the Salt Lake City legal market. (*See* ECF Nos. ECF No. 69 at 7–10; 69-1 at ¶¶ 21–24; ECF No. 69-2 at ¶¶ 31–36).

Defendant points to three cases from this district that have recognized that a rate of $320/hour is reasonable, *Reid v. LVNV Funding*, 2:14-cv-471-DAK, *Gallegos v. LVNV Funding*, 2:14-cv-516-DAK, and *Zibalstar, L.C. v. Conte*, 2:17-cv-00563-JNP.  However, in each of those cases, the reasonableness of the requested rate was not contested.  *See*, *e.g.*, *Reid v. LVNV Funding LLC*, No. 2:14-cv-471, 2016 WL 4532107, at *1 (D. Utah Aug. 29, 2016).  Thus, the cases do not represent that a rate of $320/hour is the ceiling of reasonableness.  Because the evidence before the court is inadequate as to the reasonableness of the requested rates here, the court is free to "use its own knowledge to establish the appropriate rate" for Class Counsel. *United Phosphorus*, 205 F.3d at 1203.  Applying its own knowledge, the court does not find Class Counsel's rates to be inappropriate and therefore approves of the same.  Multiplying Class Counsel's reasonable hours by these rates, the court concludes that Class Counsel is entitled to an award of **$111,961.00 IN ATTORNEYS' FEES**.

### C.  Lodestar Multiplier

Class Counsel request that their lodestar amount be increased by a multiplier of 1.5. Although there is little guidance from the Tenth Circuit on applying multipliers, the court has indicated that in determining whether a multiplier should be used to increase an attorneys' lodestar award, a court should apply the twelve factors set forth in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974).  *See In re Miniscribe Corp.*, 309 F.3d 1234, 1245 (10th Cir. 2002).  Each of these factors is discussed below.

1.   *The time and labor required.*

This was not a labor-intensive case.  While the parties had to litigate cross motions for summary judgment, the case settled quickly with limited discovery or pleading.  Since the case was initiated over three years ago, Class Counsel devoted less than 300 total hours to the matter.  While this is not an insignificant amount of work, it is hardly enough to warrant Class Counsel being awarded a premium of 1.5 times their reasonable hourly rate.

2.   *The novelty and difficulty of the questions.*

Class Counsel argue that the case presented "novel and complex issues that had not been addressed in the Tenth Circuit previously including the issue of what constituted when a debt was in 'default' and whether Defendant's subsidiary company was considered a debt collector pursuant to the FDCPA in the Tenth Circuit."  (ECF No. 69 at 11).  While the parties did have to litigate cross motions for summary judgment on the issues of whether Defendant was a "debt collector," as used in the FDCPA, and a "person" or "supplier," as used in the UCSPA, they are being awarded their fees for performing that work.  The issue was not so complex or significant that they deserve a premium for their work.  Moreover, reviewing their time entries, it appears that Class Counsel devoted less than nine total hours to conducting research on these "novel and complex" issues.  (*See* ECF No. 69-4).[4]

3.   *The skill requisite to perform the legal service properly.*

Class Counsel had to litigate cross motions for summary judgment, and ultimately prevailed on their motion.  Thus, it is clear that their skill contributed to the resolution of this matter.

---

[4] This total is an estimate, albeit a generous one, based on the records, as many of the time entries that referenced the relevant research were block bills, and it is thus impossible for the court to determine exactly how much of the billed time was devoted to researching these issues.

       4.   *The preclusion of other employment by the attorney due to acceptance of the case.*

Class Counsel acknowledge that they "did not turn down any cases as a result of this case." (ECF No. 69 at 14). While by devoting time to this case Class Counsel were precluded from devoting that time to other cases, such is the practice of law. Moreover, Class Counsel are being compensated for the time they devoted to this case. As such, this factor does not support a reward of a multiplication of Class Counsel's fees.

       5.   *The customary fee.*

The rates that Class Counsel are being awarded herein are similar to, or above, those customarily charged in the Salt Lake City legal community, and the hours for which Class Counsel are being awarded herein represent nearly 94% of their requested hours. Thus, the fee Class Counsel is receiving is customary and well above the floor of $20 per hour prescribed by the Criminal Justice Act. *See Johnson*, 488 F.2d at 718.

       6.   *Whether the fee is fixed or contingent.*

This factor focuses on "the attorney's fee expectations when he accepted the case." *Id.* Class Counsel undertook this case on a contingency fee and thus incurred work and costs without a guarantee that they would obtain a recovery. However, they knew that if successful, they would be awarded attorney fees and costs under the FDCPA. Thus, while the court recognizes that this case represented a risk to Class Counsel, it notes that Class Counsel "are very experienced in consumer actions, including FDCPA individual and class actions" and have "litigated over 2,000 cases in the past 10 years," (*see* ECF No. 69 at 17; ECF No. 69-1 at ¶ 15), and thus that they likely would not have taken on this case on a contingency matter were they not reasonably confident that they would ultimately prevail. This factor neither weighs for nor against applying the requested multiplier.

7. *Time limitations imposed by the client or the circumstances.*

"Priority work that delays the lawyer's other legal work is entitled to some premium." *Johnson*, 488 F.2d at 718.  Class Counsel argue that they had to set aside an "enormous amount of time for this case and give up time to work on other cases," including time and money spent traveling from Arizona to Utah.  (ECF No. 69 at 16).  The court does not consider 300 hours over more than a three-year span to be an "enormous" time commitment, and as discussed above, notes that Class Counsel's travel time was included in these 300 hours.  While the resolution of this case clearly required Class Counsels to commit a sufficient amount of time, Class Counsel should not be awarded a premium for performing what their oath of office requires of them.

8. *The amount involved and the results obtained.*

Class Counsel argue that they achieved "exceptional results here."  (ECF No. 69 at 16).  As discussed above, the court recognizes that Class Counsel prevailed on the cross motions for summary judgment.  However, and although the court does not intend to diminish the work or effort that Class Counsel put into this case, it is not persuaded that the final resolution of this matter constituted an "exceptional result."  The ultimate settlement of this case resulted in only a "nominal [award] to each class member," so much so that the parties and court agreed that the settlement amount was best structured as a *Cy Pres* award to Utah Legal Services.  (*See* ECF No. 66 at 3).  While the court recognized that this was an appropriate and just result, it is hardly an "exceptional" result that justifies rewarding Class Counsel with fees that are over eight times the amount of the settlement.

9. *The experience, reputation, and ability of the attorneys.*

Class Counsel are experienced and able attorneys. That is why they are being granted an hourly rate that is comparable to other experienced and able attorneys in the Salt Lake City area. Their experience and ability do not entitle them to a premium on those rates.

>    *10.  The "undesirability" of the case.*

The court should consider whether an attorney's decision to take a case "is not pleasantly received by the community or his contemporaries." *See Johnson*, 488 F.2d at 718.  Nothing about Class Counsel's representation of Plaintiffs triggers such concerns.  Indeed, Class Counsel frequently litigates such cases.

>    *11.  The nature and length of the professional relationship with the client.*

Class Counsel acknowledge that this factor does not apply in this case.  (ECF No. 69 at 18).

>    *12.  Awards in similar cases.*

Class Counsel fails to present similar cases from this district, or even this circuit, in which courts have awarded multipliers on a lodestar amount.  The only case they offer is *McPolin v. Credit Serv. Of Logan*, Case No. 1:16-cv-00116-BSJ (D. Utah 2017), in which Judge Jenkins approved a $20,000 award to them following a settlement early in the case, before any substantive discovery or motion work was completed.  (ECF No. 69 at 18).  Plaintiffs argue that they "should be entitled to exponentially more in attorneys fees considering the instant case was filed . . . nearly three years ago and was vehemently opposed by Defendant."  (ECF No. 72 at 11).  The requested lodestar amount of $120,286 is over six times that amount, and even when the lodestar amount is modified to reflect the reduction of hours ordered herein, Class Counsel would still receive a fee award that is between five and six times that amount.  Additional compensation is not warranted.

In sum, only one of the twelve *Johnson* factors weighs in favor of implementing the lodestar multiplier requested by Class Counsel.  That request is therefore be **DENIED**.

## II.    Plaintiffs' Request for Costs is Granted in Part and Denied in Part.

Plaintiffs' Motion also seeks to recover the costs that Class Counsel incurred in the

pursuit of this action.  Their request seeks an award of $8,236.21.[5]  This total can be broken

down into the following eight categories of expenses:

1.   Traveling expenses - $5,256.74

2.   Filing fees - $400.00

3.   Deposition costs - $1,756.80

4.   Mailing expenses - $7.04

5.   *Pro Hac Vice* admission fee - $250

6.   Service of process fees - $329.00

7.   PACER fees - $47.50

8.   Expenses for a binder for the Motion for Summary Judgment - $189.13

Generally, an attorney's costs are categorized as either taxable or nontaxable.  Taxable

costs generally include court fees, fees for necessary transcripts and copies, fees for "printing and

witnesses," some docket fees, and compensation of court appointed experts and interpreters.  *See*

28 U.S.C. § 1920.  All other costs are considered nontaxable.  Turning to the eight categories of

costs claims be Class Counsel, the requests for reimbursement of filing fees, deposition costs,

and (possibly) expenses for making a binder for the Motion for Summary Judgment are taxable,

and the requests for traveling expenses, mailing expenses, *Pro Hac Vice* admission fee, service

of process fees, and PACER fees are non-taxable.

---

[5] Class Counsel's Motion requests $22,684.62, but of that amount, $13,704.45 were for costs related to claims administration, which were already awarded by the court in Settlement Order and Final Judgment (ECF No. 79). Moreover, Class Counsel withdrew their request for an itemized cost incurred on 2/28/20 for "refundable/adjustable Flights to final approval hearing" in the amount of $743.96, as Class Counsel canceled its travel plans, and received a refund for that amount, due to the Final Approval Hearing being held telephonically.

In support for their request for nontaxable costs, Class Counsel point to Rule 23(h) of the Federal Rules of Civil Procedure, which states that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Class Counsel cite no agreement of the parties concerning nontaxable costs but argue that they are entitled to recover such costs under 15 U.S.C. § 1692k(a) and Utah Code § 13-11-17.5.  Neither statute adequately supports Class Counsel's argument.

Under 15 U.S.C. § 1692k(a)(3), if an action is successful in showing that a debt collector violated the FDCPA, it is liable for "the costs of the action."  It appears that Class Counsel would like the court to read "the costs of the action" to include nontaxable costs, but they offer no authority that would require, let alone permit, such a reading.  While Class Counsel do cite to four California cases to support an argument that travel costs are routinely awarded in FDCPA class actions, the cases are not binding on this court, and the court finds none persuasive, namely because in each, the opposing party did not challenge whether the requesting party was entitled to recover its travel costs.  *See Johnson v. CFS II, Inc.*, No. 5:12-CV-01091, 2013 WL 6841964, at \*10 (N.D. Cal. Dec. 27, 2013), *aff'd*, 628 F. App'x 505 (9th Cir. 2016) ("CFS does not challenge the reasonableness of Schwinn's travel costs on any ground other than challenging the reasonableness of the trip itself."); *De Amaral v. Goldsmith & Hull*, No. 12-CV-3580, 2014 WL 1309954, at \*7 (N.D. Cal. Apr. 1, 2014) ("Again, the defendants do not contest these costs in their opposition brief."); *Wren v. RGIS Inventory Specialists*, No. C-06-05778, 2011 WL 1838562, at \*1 (N.D. Cal. May 13, 2011) (analyzing re-submitted, but non-contested, supplemental materials itemizing expenditures); *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 445 (C.D. Cal. 2014) (recognizing that *Toys R Us* did not oppose the pending motions).  Moreover, the *In re Toys R Us*

case, which arguably provides the best support for Class Counsel's request, involved alleged violations of the Fair Credit Reporting Act, not the FDCPA.  *Id*. at 444.  Finally, while Class Counsel cite to the Tenth Circuit case *Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.*, 616 F.3d 1098 (10th Cir. 2010) as supporting their general assertion that they are "entitled to statutory damages, actual damages and attorney's fees and costs," that case only focused on costs and fees incurred *on an appeal* and is thus of no consequence here.  *See id.* at 1107.

Utah Code § 13-11-17.5 provides that "[a]ny judgment granted in favor of the enforcing authority in connection with the enforcement of this chapter shall include, in addition to any other monetary award or injunctive relief, an award of reasonable attorney's fees, court costs, and costs of investigation."  It appears that Class Counsel would have this court read "costs of investigation" to include travel expenses, mailing expenses, *Pro Hac Vice* admission fee, service of process fees, and PACER fees, but again, they cite no authority that supports or permits such a reading.

Because Class Counsel have failed to establish any law or agreement that authorizes their recovery of nontaxable costs, the court declines to award them the same.  As such, the court **GRANTS** Class Counsel's request to be awarded their taxable costs but **DENIES** their request to receive their nontaxable costs and thus **AWARDS** Class Counsel the **SUM OF $2,345.93 IN COSTS**.

### III.   <u>Conclusion.</u>

As more fully discussion herein, Plaintiffs' Motion for Attorneys' Fees, Costs, and Incentive Payment (ECF No. 69) is **GRANTED IN PART AND DENIED IN PART**.  Plaintiffs are awarded **$111,961.00 IN ATTORNEYS' FEES** and **$2,345.93 IN COSTS**, for a **TOTAL AWARD OF $114,306.90**.  Plaintiffs' request for a lodestar multiplier of its fees is **DENIED**.

DATED this 7th day of July, 2020.

BY THE COURT:

Clark Waddoups
United States District Judge